UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15 CR 21 ERW / DDN |
| | ) | |
| TONY LEE BESS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND RECOMMENDATION

This action is before the court on the pretrial motions of the parties, which were referred to the undersigned Magistrate Judge under 28 U.S.C. 636(b).

From the evidence adduced during the evidentiary suppression hearing, and considering the memoranda of the parties, the undersigned makes the following findings of fact and conclusions of law:

## FACTS

1. St. Louis Metropolitan Police Detective Shaviste Grandberry graduated from the Police Academy in 2008. Detective Brandon Wyms graduated from the Police Academy in 2009. On July 23, 2014, they were assigned to Special Operations Unit, which was responsible for patrolling high crime areas of the City in unmarked police vehicles.

2. On July 23, 2014, Dets. Grandberry and Wyms were partners on a 10:00 AM to 6:00 PM shift in the Special Operations Unit. They were directed to patrol the Dutchtown neighborhood of St. Louis. The Dutchtown neighborhood had recently experienced an increase in dangerous crimes such as robberies, burglaries, and assaults.

3. The detectives used a black police department Chevrolet Malibu without obvious police markings for their shift. The car had hidden flashing emergency lights on

the passenger visor.[1]  The car also had a siren.  Both detectives wore plain clothes and black ballistic vests with the word "POLICE" on the front and back.

4. At approximately 2:15 PM, Det. Grandberry was driving east on Meramec St. with Det. Wyms sitting in the passenger seat.  The detectives observed a gray Saturn, with four passengers, turn east onto Meramec from Oregon.  Both vehicles traveled east on Meramec with the detectives' vehicle following immediately behind the Saturn, with no vehicle in between. When the Saturn stopped at a traffic light, the detectives observed that the vehicle's right rear brake light did not illuminate.  Det. Wyms also observed that the vehicle's license plate had expired.  The officers knew these were violations of the St. Louis City traffic laws.  They determined then to stop the car.

5. The detectives followed the Saturn for a few blocks and then initiated a traffic stop by turning on the police car's emergency lights and siren.  Both vehicles stopped in the 4100 block of Broadway.

6. While pulling over the Saturn, the detectives saw the driver, later identified as defendant Tony Lee Bess, lean forward in the driver's seat until his head was out of sight.  Based on Det. Grandberry's training and previous experience, he believed that the driver could be hiding or retrieving a weapon.

7. With both vehicles stopped, the officers got out.  Det. Grandberry approached the driver's side of the Saturn and Det. Wyms the passenger side.  Due to fear of a weapon possibly being present, Grandberry ordered everyone inside the vehicle to place their hands where they could be seen. The officers saw that the driver was slow to raise his hands but eventually raised them and put them outside the open car window as directed.

8. While Det. Wyms advised the driver that the reason for the stop was the faulty brake light, Det. Grandberry looked inside the vehicle through the open windows

---

[1] Aleasha Thomas, defendant's witness, testified that the police car had emergency lights on its dashboard.  For the issues before the court, this difference in testimony is not important.

2

for visible weapons. He saw in plain view approximately one to two inches of the butt of a black handgun under the driver's seat near the driver's right foot.

9. After observing the handgun, Det. Grandberry gave a hand signal to Det. Wyms—out of sight of the vehicle's occupants—indicating that he observed a weapon in the vehicle. Neither detective drew his firearm.

10. Det. Grandberry next ordered Bess to exit the vehicle and walk to the vehicle's rear. Det. Wyms then had the other three occupants exit the vehicle and move to the curb. All four occupants did as they were directed.

11. Det. Wyms returned to the Saturn and immediately observed a black handgun under the driver's seat in plain view.[2] Wyms then reached inside the vehicle and retrieved the firearm, a .40 caliber black Springfield handgun, from under the driver's seat. He immediately rendered the handgun safe by ejecting the round from the chamber and removing the magazine. He next secured the firearm in the police car's trunk. Neither detective found any other weapon or any contraband in the Saturn.

12. Det. Grandberry performed a computer records check which revealed that Bess was a felon and also the owner of the vehicle. Wyms then placed Bess under arrest for unlawful possession of a firearm.

---

[2] Aleasha Thomas testified during the suppression hearing to a different version of events: Thomas had known Bess for approximately five months. Thomas's sister, who was living with Thomas on July 23, 2014, was dating Bess. Aleasha Thomas testified that she was standing across the street after exiting a bus and saw the detectives searching the vehicle for one to two minutes before finding the firearm in the vehicle. Thomas testified that she saw the officer search other parts of the vehicle before reaching up underneath the seat and finding the firearm. Thomas initially testified she was five to ten feet away from the vehicle, but later testified she was more than forty feet away. On July 23, 2014, Thomas was a fulltime housekeeper at a hotel in Earth City, St. Louis County. Thomas used two different buses and the Metrolink rail service to get to work, a commute which takes approximately two hours each way. On July 23, 2014, Thomas worked a six to seven hour shift beginning at 8:00 AM and then traveled two hours back home. Thomas testified that the events occurred between 4:00 PM to 5:00 PM, not 2:15 PM. She later claimed that she did not know what time she witnessed the events. Because of her friendly relationship with Bess and the inconsistency between her work hours and the time of the traffic stop on July 23, 2014, the undersigned credits the testimony of the officers about the events of July 23, 2014.

13. Next, Det. Wyms read Bess his <u>Miranda</u> rights from a police department issued card that reads as follows:

> You have the right to remain silent. Anything you say can and will be used against you in court. You have the right to a lawyer and to have him with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed for you before any questioning, if you so desire.

Bess understood his rights and indicated this to Det. Wyms by nodding his head.

14. Shortly thereafter, Dets. Grandberry and Wyms placed Bess in the back seat of their police vehicle and conveyed him to the police station. The other occupants of Bess's vehicle were released at the scene of the stop.

15. During the transport, neither detective questioned Bess. The detectives did not threaten Bess or make any promises to him. Bess was alert and oriented to time, place and circumstances. He was not intoxicated or otherwise impaired.

16. At some point during the transport, without being questioned, Bess told the detectives that he would rather be caught with a weapon than without one because he has ongoing disagreements with people on the street.

17. Det. Wyms issued traffic tickets for the observed traffic law.[3]

## **DISCUSSION**

Defendant Bess seeks the suppression of the firearm and his oral statements. He argues the vehicle stop, the search of the Saturn vehicle, and his arrest were illegal under the Fourth Amendment. The Fourth Amendment provides in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." U.S. Const., amend IV.

The amendment's reasonableness standard must be applied to the warrantless actions of Dets. Grandberry and Wyms on July 23, 2014. This standard is an objective

---

[3] A review of the audio record of this case indicates that Det. Grandberry testified at the suppression hearing on cross-examination by defense counsel that Det. Wyms may have issued traffic tickets for the observed traffic law violations.

4

one; their subjective states of mind or intent, e.g., whether they were looking for weapons in a high crime area, when making the traffic stop are legally irrelevant. Whren v. United States, 517 U.S. 806, 813 (1996). In this case, the officers' observation of the Saturn automobile being operated with a faulty brake light and an expired license plate, which they knew were violations of the law, gave them probable cause to stop the vehicle. United States v. Wright, 512 F.3d 466, 471 (8th Cir. 2008). The lawful scope of the officers' actions, without more information, would have been limited to the reasonable bounds of investigating the traffic law violations, including having passengers exit the stopped vehicle during the stop. Maryland v. Wilson, 519 U.S. 408, 414-15 (1997).

In this case, the circumstances of the stop were not those of the usual stop to investigate and resolve the violation of the traffic laws. Instead, even before the officers alighted from their vehicle they saw the driver act in a way that indicated the possibility that he was secreting a weapon under his front seat. This speculation was reasonable given the nature of defendant Bess's movements and the officers' experience and training. United States v. Stewart, 631 F.3d 453, 457-58 (8th Cir. 2011). Therefore, the officers were authorized under the Fourth Amendment not only to conduct the traffic stop but to further investigate whether or not there was a firearm present which might jeopardize their safety and which might be involved in criminal activity. Michigan v. Long, 463 U.S. 1032, 1047 (1983); United States v. Chavez Loya, 528 F.3d 546, 553 8th Cir. 2008).

When Det. Grandberry looked through the open window of the driver's door, he saw in plain view what he knew to be a substantial part of a firearm. With this observation, the officers were authorized under the Fourth Amendment to have all occupants of the Saturn to put their hands where the officers could see them, to have the occupants come out of the vehicle, to move away from the vehicle, and for Det. Wyms to open the driver's door, seize the firearm, render it safe, and secure it in the police vehicle. Long, 463 U.S. at 1049, 1052. The warrantless seizure of the weapon from under the driver's seat of the Saturn was reasonable under the Fourth Amendment. This firearm should not be suppressed as evidence at trial.

Within a short period of time, Det. Grandberry learned from the police computer that defendant had a felony conviction. The totality of the circumstances established probable cause for the arrest of defendant Bess for the unlawful possession of a firearm. Beck v. Ohio, 379 U.S. 89, 91 (1964) (ruling that probable cause for a warrantless arrest exists when at the time of the arrest the police had reasonably trustworthy information sufficient to persuade a reasonable person that the arrested person had committed or was then committing a crime). Therefore, the warrantless arrest of defendant Bess was lawful under the Fourth Amendment.

After Det. Wyms arrested defendant, he read Bess his constitutional rights to remain silent and to counsel, pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Bess understood his rights and so indicated this to the detective with a nod of his head. From the facts of this case, the undersigned concludes that defendant, knowing his rights and thereafter making voluntary statements to the officers, waived his Miranda rights. North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979).

The only incriminating statement of defendant evidenced during the suppression hearing was the spontaneous one he made to the officers about why he had the firearm (Finding 16 above). This statement was constitutionally voluntary, because it was not coerced from him by the police by any force, threat of force, or promise of any kind. Colorado v. Connelly, 479 U.S. 157, 168-69 (1986). Therefore, his statement should not be suppressed.

Defendant argues that the recent amendment to the Missouri Constitution is relevant to whether the officers had probable cause to arrest defendant for illegally possessing the firearm. The constitutional amendment, Article I, § 23 reads:

> That the right of every citizen to keep and bear arms, ammunition, and accessories typical to the normal function of such arms, in defense of his home, person, family and property, or when lawfully summoned in aid of the civil power shall not be questioned. The rights guaranteed by this section shall be unalienable. Any restriction on these rights shall be subject to strict scrutiny and the state of Missouri shall be obligated to uphold these rights and shall under no circumstances decline to protect against their infringement. Nothing in this section shall be construed to prevent the

6

general assembly from enacting general laws which limit the rights of convicted violent felons or those adjudicated by a court to be a danger to self or others as a result of a mental disorder or mental infirmity.

V.A.M.S. Mo. Const. Art. I, § 23 (eff. Aug. 5, 2014.)

Defendant argues that this constitutional amendment is to be applied retroactively to nullify the enforcement of the preexisting state law that made defendant's possession of this firearm illegal, citing State ex rel. Goldman v. Hiller, 278 S.W. 708, 709 (Mo. 1926) (en banc). Defendant's argument is deficient for several reasons. First, this constitutional amendment language does not appear to require retroactive application to criminal cases such as the defendant's. Defendant's citation to the holding of State ex rel. Goldman does not require a contrary conclusion. Goldman involved ballot counting in 1925 and the application of a 1924 Missouri constitutional amendment to nullify a 1921 enactment of the Missouri General Assembly.

Secondly, even if the effective date of the Missouri constitutional amendment was before the events of this case, the amendment does not require the application of its language to the enforcement of federal criminal law, whether under the federal Constitution or Congressional statutes, in federal court cases. And nor could it, because the provisions of the Missouri Constitution, when not incorporated or implemented by federal law, must yield to the Supremacy Clause of the Constitution of the United States, Art. VI, cl. 2, which provides:

> This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the Judges in every State shall be bound thereby, anything in the Constitution or laws of any State to contrary notwithstanding.

U.S. Const., Art. VI, cl. 2.

Defendant further argues that the length of time from the stopping of the Saturn to the time defendant was placed under arrest extended beyond the amount of time reasonably required to complete the traffic stop. This argument overlooks the circumstance that within a very short time following the arrival of the officers at the sides

7

of the Saturn Det. Wyms saw the butt of the firearm sticking out from under the driver's seat. This observation changed the event from being a mere traffic stop to an operation in which the officers were authorized to nullify the presence of the firearm as a potential weapon against them and in which the officers were authorized to investigate whether a violation of firearms laws had been committed. United States v. Johnson, 58 F.3d 356, 357-58 (8th Cir. 1995) (ruling that where the circumstances of the traffic stop "give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions.").

## ORDER AND RECOMMENDATION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of the United States for a determination by the court of the admissibility of arguably suppressible evidence (Doc. 15) is DENIED as moot.

**IT IS HEREBY RECOMMENDED** that the motions of defendant to suppress evidence (Docs. 14, oral; 26) be DENIED.

The parties have until not later than June 30, 2015 to file written objections to this Order and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 11, 2015.